**Alice HOUCHENS, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 91–3026.**

United States Court of Appeals, Federal Circuit.

July 29, 1991.

William L. Bransford, Neill, Mullenholz and Shaw, of Washington, D.C., argued for petitioner. Of Counsel was Suzanne Logue Lawrence.

Lisa B. Donis, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director.

Before NIES, Chief Judge, and RICH and MICHEL, Circuit Judges.

NIES, Chief Judge.

Alice Houchens seeks review of the initial decision of the Merit Systems Protection Board, *Houchens v. Office of Personnel Management*, 46 M.S.P.R. 106 (1990), upholding denial of her request for a survivor annuity under the Civil Service Retirement System ("CSRS") which became final when the Board denied review on September 20, 1990. Her husband, Coulter Houchens was found to have died while he was working for an international organization in the special status of a transferred employee. OPM and the Board interpreted the pertinent statutory provisions, 5 U.S.C. §§ 3582(a) and 8341(d) (1988), as precluding

her eligibility. We hold that petitioner is eligible under the statute and, accordingly, reverse.

## BACKGROUND

Alice Houchens was married to Coulter Christian Houchens, Jr., who transferred in 1978 from the Federal Aviation Administration, where he was employed as an air traffic controller, to a post with the International Civil Aviation Organization (ICAO) in Saudi Arabia. During the more than ten years Coulter was employed with the FAA, he was covered by the CSRS and made all necessary contributions. After transferring to ICAO, deductions were made from his pay for the international organization's retirement plan.[1] No contributions were made to CSRS during this period. In August 1980, he inexplicably disappeared while on a trip to Thailand. Because he was not heard from for seven years, the Circuit Court of Loudon County, Virginia, entered an order declaring that he was presumed to have died in August 1980.

As surviving widow, Alice then filed an application with the Office of Personnel Management ("OPM") to receive a CSRS survivor annuity in accordance with 5 U.S.C. § 8341(d) (1988) which provides:

> If an employee or Member dies after completing at least 18 months of civilian service, his widow or widower is entitled to an annuity equal to 55 percent of an annuity computed under section 8339(a)–(f), (i), and (o) of this title as may apply with respect to the employee or Member. . . .

Under section 8341(d), Alice is entitled to a survivor's annuity, *inter alia,* only if her husband was an "employee," within the meaning of that section, at the time of his death.[2] Although actually employed by the ICAO, Alice maintained that, for retirement purposes, her husband continued to be an employee of the FAA. The question of Coulter's status as an "employee" was a major issue below. OPM maintained, and the board agreed, that he was not an "em-

ployee" of FAA. During this appeal, the government conceded that this position was legally wrong. However, an explanation of this aspect of the case is necessary in order to understand the continuing controversy.

In 1958, Congress passed legislation designed to encourage federal employees to accept temporary positions with certain international organizations. Making federal personnel available to international organizations has benefits to both the United States Government and the international organization. Through the transfers of federal employees to international organizations, federal personnel have the opportunity to acquire international experience of value to the United States Government. International organizations also benefit through the services and experience of well-qualified Americans. United States government employees had been reluctant to take positions with international organizations because it meant a loss of benefits, such as survivor and disability annuities, health insurance, pay differentials and other fringe benefits of our civil service system. As stated in the legislative history of the Federal Employees International Organization Service Act of 1958, Pub.L. No. 85–795, § 4(b)(1), 72 Stat. 959, now codified at 5 U.S.C. § 3581 *et seq.* (hereinafter "Act"):

> *The primary purpose of the bill* is to provide improved means of making Federal specialist personnel available to international organizations for temporary periods of service and secretariat and technical assistance positions. These improved means would be obtained under the provisions of the bill by authorizing the detail of Federal personnel to international agencies, general authority for such details not now being available, and by authorizing the transfer of Federal personnel to such agencies *without loss of Federal employment rights and benefits.* [Emphasis added.]

---

1. Mr. Houchens' participation in the ICAO's retirement plan was mandatory.

2. An employee must also have 18 months of *civilian* service which is *creditable* to their retirement. 5 U.S.C. § 8341(d).

H.R.Rep. No. 2509, 85th Cong., 2d Sess. 2, *reprinted in* 1958 U.S.Code Cong. & Ad. News 4007, 4008.

The statutory provision found at 5 U.S.C. § 3582(a) reflects the congressional intent set forth in the Act's legislative history of encouraging federal employees to transfer to international organizations while allowing these employees to retain their coverage, rights, and benefits as federal employees. Transfers to international organizations are for limited periods—usually a year—but the period may be extended. At the end of the term, an employee has a right to reemployment in a position comparable to the one they previously occupied.

To accomplish these objectives section 3582 now provides:

(a) An employee serving under an appointment not limited to 1 year or less who transfers to an international organization with the consent of the head of his agency is entitled—

(1) to retain coverage, rights, and benefits under any system established by law for the retirement of employees, if necessary employee deductions and agency contributions in payment for the coverage, rights, and benefits for the period of employment with the international organization are currently deposited in the system's fund or depository; and the period during which coverage, rights, and benefits are retained under this paragraph is deemed creditable service under the system, except that such service shall not be considered creditable service for the purpose of any retirement system for transferring personnel, if such service forms the basis, in whole or in part, for an annuity or pension under the retirement system of the international organization;

.    .    .    .    .

(b) An employee entitled to the benefits of subsection (a) of this section is entitled to be reemployed within 30 days of his application for reemployment in his former position or a position of like seniority, status, and pay in the agency from which he transferred, . . . .

Subsection (b) concludes with certain time restrictions. With respect to pay differential, the section provides:

... Such a payment shall be made to an employee who is unable to exercise his reemployment right because of disability incurred while on transfer to an international organization under this subchapter and, in the case of any *employee who dies while on such a transfer* or during the period after separation from the international organization in which he is properly exercising or could exercise his reemployment right. [Emphasis added.]

It appears that the statute in section 3582(a) contemplates that "deductions" would be made from the transferred employee's wages by the international organization and paid over to CSRS and the employee would receive immediate credit toward CSRS retirement for the time served as a transferee. However, at some international groups, a transferee is required to participate in the international group's own retirement and benefits plans. This was the case with ICAO. In any event, it appears that it is not always or perhaps even generally the case that the international organization makes "deductions" for CSRS. Instead of "deductions," at least at FAA, a transferred employee is instructed to remit payments for retirement, health and life insurance benefits during their service with ICAO. Coulter did not make any CSRS payments despite his written election to stay under CSRS. At some time in the spring of 1980, OPM requested retroactive payments which are permissible under 5 C.F.R. § 352.309(c) (1990). It is not established that Coulter received this notice.

Originally OPM held that Alice was not entitled to benefits because Coulter had not made contributions to CSRS during his time with ICAO. On reconsideration, OPM ruled against her on the ground that Coulter was not an "employee" under section 8341(d) because he did not exercise his reemployment rights. OPM therefore deemed Alice to be the widow of a "former" employee and awarded her a lump sum death benefit consisting of a refund of

Coulter's contributions to the retirement fund plus five years' interest. On the theory of Coulter's lack of employee status, it made no difference to Alice's claim that Coulter had not made contributions during his two years abroad. Per OPM, she was not, in any event, the widow of an "employee."

The MSPB administrative judge agreed with OPM that Coulter was not an "employee" on a somewhat different rationale, not here material, and also ruled that even if he were, his failure to make payments into CSRS terminated his retirement benefits.

Before us, OPM repudiated the MSPB's and its own former position that Coulter was not an "employee" of the FAA at the time of his death. In its brief, OPM stated:

... the MSPB's determination [that Coulter Houchens was not a federal employee] was incorrect.... As Mrs. Houchens points out, 5 U.S.C. § 3582 is rendered meaningless by the MSPB's interpretation. Pursuant to that interpretation, *no* beneficiary of an employee who dies while transferred to an international organization ever would be able to collect benefits.

We agree. Indeed, the express provision of the statute that pay differentials are to be paid in the case of "an *employee* who dies *while on such* transfer" negates any possible argument over whether a transferee remains an "employee" of the federal government during the time of the approved transfer.

OPM then shifted its ground, arguing that Coulter had an option to elect coverage under ICAO's retirement plan or under CSRS, but not both. Because Coulter *elected* ICAO coverage, per OPM, he lost CSRS benefits. OPM advanced the interpretation of section 3582 that an employee must meet two requirements to retain benefits: (1) he must make contributions, and (2) he must receive credit in CSRS for the time worked in the international organiza-

tion. When Coulter enrolled in the ICAO plan, per OPM, he lost CSRS coverage. However, OPM was clearly wrong in its understanding that the ICAO plan was voluntary. That plan was involuntary.

In a supplemental brief and at oral argument, the government continued to urge that to retain coverage in CSRS, Coulter had to make payments and receive creditable time for ICAO service. However, recognizing that Coulter had *no option* to decline enrollment in ICAO's plan, OPM now urges that it was not mere enrollment which caused Coulter to lose CSRS coverage but rather Alice's receipt of a death benefit from the ICAO plan. Because Coulter's ICAO years are the basis for the ICAO death benefits, they cannot also be creditable, per OPM, to CSRS. That would amount to "double dipping" under two systems which Congress sought to prohibit.[3]

At this point it will aid understanding to explain that payments can only be made into CSRS for creditable service. Indeed, the government admits that contributions *cannot* be made for *uncreditable* time. Thus, the government cannot rely merely on the fact that Coulter made no payments as a basis to deny Alice an annuity. Moreover, it follows that, under section 3582(a), no contributions are "necessary" for time which is not "creditable." It is for this reason that the government argues for the two-prong eligibility test of (1) creditable service and (2) contributions. However, a single requirement that contributions be made—whether the service is creditable or not—cannot be a condition in itself for eligibility.

Petitioner's argument in the face of each of these shifting theories has remained constant. Petitioner interprets section 3582(a) as giving an entitlement to retention of CSRS benefits conditioned only on payments "if necessary." The clause of section 3582(a)(1) which relates to when service in the international organization is creditable, per petitioner, does not create a

3. Congress amended 5 U.S.C. § 3582(a) in 1969 to eliminate "double-dipping" by adding a provision denying creditable service to a transferred employee whose international service "forms the basis, in whole or in part, for an annuity or pension under the retirement system of the international organization." *See* Pub.L. No. 91–175, Part V, § 502(c)–(f), 83 Stat. 825 (1969).

requirement that the international service *must be* creditable to retain one's entitlement. Per petitioner, if credit is given for the international service, contribution is necessary. If no credit is given, no contribution is "necessary" within the meaning of the first requirement.

Alice seeks no credit for Coulter's time at ICAO under CSRS. Rather, Alice seeks a survivor's annuity based on her husband's ten plus years in FAA, for which all contributions were made. Likewise, the death benefit she received from ICAO was based only on time with ICAO. Thus, Alice seeks no windfall of double dipping; *i.e.*, receiving credit for the same time period under two plans.

The issue, thus, is whether the time served as a transferred employee must be credited to CSRS in order for the employee to be entitled to CSRS benefits. As can be seen in this case, this requirement would automatically preclude a survivor's annuity whenever the international organization has a retirement plan of its own which affords benefits to a surviving spouse, even if the employee had made the payments demanded by OPM during the period of transferred service. We see nothing in the statute which warrants this restrictive interpretation of section 3582(a). The statute says a transferred employee *"is entitled* to retain coverage, rights and benefits, *if necessary* employee deductions and agency contributions *in payment for* the coverage, rights and benefits ... are *currently* deposited" (emphasis added). Current payments are clearly necessary to receive credit currently. Where, however, a transferred employee must participate in the international group's retirement program, it cannot be known until the end of the transfer period or the death or disability of the employee whether the service will be creditable. Contrary to OPM, we conclude that payment is "necessary" only when credit is, in fact, given. And if no credit is given, then no payment is "necessary." Thus, entitlement can continue without payments or creditable time in some circumstances.

OPM's requirement for payments to CSRS during the transfer period when the creditability of the time is unknown is, in reality, a requirement for *contingency* payments, not the "necessary" payments required by the statute. The purpose of the statute, to prevent loss of CSRS benefits by transferring employees so as to encourage such transfers, would be significantly frustrated by OPM's reading that time with the international organization *must be* creditable to CSRS. Moreover, having to pay into CSRS and into an international fund imposes a serious financial burden on a transferee which can only discourage participation in the program. Inasmuch as OPM has authority to accept retroactive payments under 5 C.F.R. § 352.309(c), its interpretation that contingency payments must be made appears wholly unwarranted.

■ While ordinarily we must give deference to an agency's interpretation, such deference is not warranted here. OPM has taken at least five different positions within the course of this litigation. None of them is persuasive.

In sum, we hold that an employee transferred to an international organization need not always have his or her service credited to CSRS, and make payments for that coverage, in order for the employee to qualify for continued CSRS coverage. However, since the situations involving a transferred employee's benefits may be quite varied, we expressly limit that holding to the situation before us, in which the employee died during the period of the approved transfer and the employee's participation in the retirement system of the international organization was not optional.

For the foregoing reasons, the decision of the MSPB upholding OPM's decision denying Alice Houchen's claim to survivor benefits is

REVERSED.